UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARIANE KIRALY,

     Plaintiff,

v.

CORNELL COOPERATIVE EXTENSION
OF DELAWARE COUNTY, Board of Directors,
Executive Director; and CORNELL
COOPERATIVE EXTENSION ADMINISTRATION,
Oversight and Administration,

     Defendants.

_____

3:23-CV-0446
(GTS/ML)

APPEARANCES:

MARIANE KIRALY
 Plaintiff, *Pro Se*
188 Kiraly Road
Walton, NY 13856

COUGHLIN & GERHART LLP
 Counsel for Defendant Cornell Coop.
 Extension of Delaware County
P.O. Box 2039
99 Corporate Drive
Binghamton, NY 13902-2039

CORNELL UNIVERSITY OFFICE OF COUNSEL
 Counsel for Defendant Cornell Coop.
 Extension Administration
300 CCC Building
235 Garden Avenue
Ithaca, NY 14853

OF COUNSEL:

ANGELO D. CATALANO, ESQ.

CONRAD R. WOLAN, ESQ.

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment discrimination action filed by Mariane

Kiraly ("Plaintiff") against Cornell Cooperative Extension of Delaware County ("CCE Delaware") and Cornell Cooperative Extension Administration ("Cornell Administration") (collectively "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Equal Pay Act of 1963, are (1) Defendant CCE Delaware's motion to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and (2) Defendant Cornell Administration's motion to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6).   (Dkt. Nos. 11, 18.)   For the reasons set forth below, Defendant CCE Delaware's motion is granted in part and denied in part, and Defendant Cornell Administration's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in her Complaint, which has been construed with special solicitude based on Plaintiff's *pro se* status, Plaintiff generally asserts four separate claims: (1) a claim for discrimination on the basis of her gender pursuant to Title VII, specifically related to (a) a failure to promote her to a higher job title despite the fact she was already performing duties inherent in such higher job title, and (b) disparate pay; (2) a claim for a hostile work environment pursuant to Title VII; (3) a claim for retaliation pursuant to Title VII as a result of her filing a charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"); and (4) a claim pursuant to the Equal Pay Act.   (*See generally* Dkt. No. 1.)

### B.      Parties' Briefing on Defendants' Motions to Dismiss

#### 1.      Defendant Cornell Administration's Motion to Dismiss

##### a.      Defendant Cornell Administration's Memorandum of Law

Generally, in its motion to dismiss, Defendant Cornell Administration[1] argues that Plaintiff has failed to assert a plausible claim against it because she has not alleged that it is either her employer or a joint employer for the purposes of Title VII, and therefore has not plausibly alleged that it can be held liable for any of her claims.   (Dkt. No. 11, Attach. 1.) Specifically, Defendant Cornell Administration argues that Plaintiff's Complaint alleges that she was employed by Defendant CCE Delaware, and the only basis she asserts for liability against Defendant Cornell Administration is that it failed to "oversee" Defendant CCE Delaware to ensure that entity was complying with equal employment laws, but she offers no allegations to plausibly suggest that Defendant Cornell Administration was a joint employer with Defendant CCE Delaware.   (*Id.* at 6-13.)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Cornell Administration's motion, Plaintiff argues that she has sufficiently alleged that Defendant Cornell Administration was negligent in its duty to cooperatively manage and oversee Defendant CCE Delaware.   (Dkt. No. 16.)   In making this argument, Plaintiff admits that no direct employer-employee relationship existed between her and Defendant Cornell Administration, but that defendant was nonetheless "bound by County Law 224 to oversee the administrative workings and adherence to the rules put forth by [Defendant Cornell Administration] to [Defendant CCE Delaware], including [equal opportunity employment] compliance."   (*Id.* at 4.)   She argues that, under N.Y. County L. § 224(e), Defendant Cornell Administration has the duty to oversee the work of a cooperative extension

---

[1]      Defendant Cornell Administration states in its memorandum that the Cornell Cooperative Extension Administration "is not an entity but rather a function of Cornell University," and that Cornell University is the true party against whom Plaintiff has asserted such claims.   (Dkt. No. 11, Attach. 1, at 4 n.2.)   The Court acknowledges this, but will refer to the party as "Cornell Administration" throughout this Decision and Order for the sake of clarity.

and is given the authorization to set standards for professional staff, which includes creating job classifications and position descriptions, and that Defendant Cornell Administration was negligent in failing to confer upon her the appropriate title for the work she was performing. (*Id.* at 7-9.)   Plaintiff further argues that, because the statute gives Defendant Cornell Administration the authority to approve the form of the extension's organization and administration, as well as the extension's constitution, Defendant CCE Delaware is a subordinate agency of Defendant Cornell Administration, one that is explicitly subject to the rules and regulations set forth by Defendant Cornell Administration, which includes equal employment opportunity policies.   (*Id.* at 8.)   In sum, Plaintiff generally argues that, because Defendant Cornell Administration is tasked with overseeing and cooperatively managing the county extension associations, which included conferring titles on employees of such associations and distributing the funds to pay those employees' salaries, it can be held liable for negligently failing to rectify the discrimination against Plaintiff at the hands of Defendant CCE Delaware. (*Id.* at 4-10.)

         **c.**       **Defendant Cornell Administration's Reply Memorandum of Law**

Generally, in reply to Plaintiff's opposition, Defendant Cornell Administration argues that N.Y. County L. § 224 does not render it a joint employer that has control over Plaintiff as an employee, but instead merely provides it with general supervision over the cooperative extension's work and the power to make rules and regulations for the organization and conduct of that work.   (Dkt. No. 19, at 3-4.)   Defendant Cornell Administration argues that its general supervisory authority of the cooperative extension's work is insufficient to plausibly suggest the level of control required to subject it to liability under Title VII.   (*Id.*)

## 2. Defendant CCE Delaware's Motion to Dismiss

### a. Defendant CCE Delaware's Memorandum of Law

Generally, in its memorandum of law, Defendant CCE Delaware makes four arguments. (Dkt. No. 18, Attach. 4.)   First, Defendant CCE Delaware argues that Plaintiff's discrimination claims pursuant to Title VII are untimely because she did not file her complaint with the EEOC within 300 days of any alleged adverse action.   (*Id.* at 7-8.)   Specifically, Defendant CCE Delaware argues that the only specific alleged adverse action in the Complaint was a reclassification of her position that occurred in 2016, well before when she filed her EEOC complaint on June 24, 2021.   (*Id.*)

Second, Defendant CCE Delaware argues that, as to her retaliation claim, Plaintiff failed to exhaust her administrative remedies because she did not assert facts related to any such retaliation in her EEOC charge (given that the relevant conduct she alleges occurred in December 2021, *after* she filed that complaint), and did not file a subsequent charge to encompass that additional alleged conduct.   (*Id.* at 8.)

Third, Defendant CCE Delaware argues that Plaintiff has failed to state a claim for gender discrimination based on disparate treatment under either Title VII or the Equal Pay Act because (a) as to Title VII, she has failed to allege any timely adverse employment action, noting that her own allegations show no change in her job title other than the "reclassification" in 2016 (rendering that claim time-barred) and that she voluntarily resigned from her employment in 2021 rather than being discharged, and (b) as to the Equal Pay Act, she has not alleged, other than conclusorily, that she was paid less than a male employee who was performing equal work in a job requiring equal skill, effort, and responsibility, or that the jobs she and her comparator

5

performed were done so under similar working conditions.   (*Id.* at 9-12.)

Fourth, Defendant CCE Delaware argues that Plaintiff's asserted retaliation claim premised on delayed payments for her accrued paid time off (and thus a loss of Social Security benefits) is barred by a previous settlement between Plaintiff and Defendant CCE Delaware. (*Id.* at 12.)

### b.      **Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendant CCE Delaware's motion, Plaintiff makes four arguments.   (Dkt. No. 21.)   First, Plaintiff argues that she exhausted her administrative remedies, pointing to various complaints of gender discrimination she made to personnel at both Defendant CCE Delaware and Defendant Cornell Administration in 2012, 2016, 2018, 2020, and 2021, and a reclassification that constituted a demotion that occurred in 2016; she further argues specifically that her complaints in 2021 were within the 300-day deadline, and she suffered an ongoing adverse action in the form of a failure to promote, failure to compensate men and women equally, and retaliation following the filing of her EEOC charge.   (*Id.* at 5-9.)

Second, Plaintiff similarly argues that her action is timely because the discrimination has been ongoing continuously for 20 years, she made formal complaints about it in 2012, 2015, 2016, 2018, 2020, and 2021 with little or no response from Defendants, and she suffered adverse actions in the form of Defendant CCE Delaware retaliatorily delaying the pay-out of her accrued time off, and making her last six months of work "unbearable" through various actions in retaliation for her filing of the EEOC charge.   (*Id.* at 8-9, 11.)

Third, Plaintiff argues that she has plausibly asserted a claim of discrimination under Title VII (and the Equal Pay Act) by submitting evidence in support of her EEOC charge

regarding the titles, salaries, and duties of various male coworkers, particularly those of Paul Cerosaletti.   (*Id.* at 10-11.)

Fourth, Plaintiff argues that, as part of Defendant CCE Delaware's retaliation against her, it delayed payment of her accrued leave time in a manner that caused her to lose Social Security benefits.   (*Id.* at 9-10.)   She acknowledges that Defendant CCE Delaware partially compensated her for that loss through a payment of $5,000, but argues that she found out after that payment that there was an additional loss related to benefits for her husband that was not accounted for by that payment.   (*Id.*)

c.      **Defendant CCE Delaware's Reply Memorandum of Law**

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant CCE Delaware makes four arguments.   (Dkt. No. 23.)   First, Defendant CCE Delaware argues that Plaintiff's discrimination claims are untimely because she has not provided any allegations or arguments even suggesting that an adverse employment action was taken against her within 300 days of when she filed her EEOC charge, but instead merely asserts that her complaints to Defendants were simply ignored.   (*Id.* at 4-5.)

Second, Defendant CCE Delaware argues that Plaintiff failed to exhaust her administrative remedies regarding her claims of retaliation because there is no allegation or proof showing that she raised any of these allegations of retaliation in a charge before the EEOC, and it is undisputed that the EEOC complaint she did file was submitted before any of the retaliation she now alleges.   (*Id.* at 5.)

Third, Defendant CCE Delaware argues that Plaintiff has failed to state a claim under either Title VII or the Equal Pay Act because (a) as to Title VII, Plaintiff has failed to allege a

sufficient (and timely) adverse employment action by pointing to a job title reclassification in 2016 and the fact that her internal complaints were simply ignored, and (b) as to the Equal Pay Act, she admits she was never in the position of Team Leader, but has attempted to compare herself to a male coworker who was in the position of Team Leader and thus has not shown a sufficient parity between the work she and her alleged comparator performed.   (*Id.* at 6-7.)

Fourth, Defendant CCE Delaware argues that any claim asserted for a loss of Social Security benefits related to her accrued leave is barred by the previous settlement between the parties, regardless of whether Plaintiff did not know the full consequences to her Social Security benefits at the time she signed the waiver and release of claims; in any event, her alleged damages appear to be to her husband, a third party who is not involved in this action.   (*Id.* at 7.)

## II.   LEGAL STANDARDS GOVERNING A MOTION TO DISMISS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.   *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2) [emphasis added].   In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).   On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.   *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).   For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).   For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.   *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.   Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.   *Id*. at 555-70.   The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."   *Id*. at 555.   More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.   *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .   [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."   *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).   However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."   *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.   *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).   Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.*

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.   Generally, when contemplating a

dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters

outside the four corners of the complaint may be considered without triggering the standard

governing a motion for summary judgment: (1) documents attached as an exhibit to the

complaint or answer, (2) documents incorporated by reference in the complaint (and provided by

the parties), (3) documents that, although not incorporated by reference, are "integral" to the

complaint, or (4) any matter of which the court can take judicial notice for the factual

background of the case.[2]

---

[2]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .   Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no

III.    ANALYSIS

A.    Whether Plaintiff's Claims Are Untimely or Unexhausted

After careful consideration, the Court answers this question in the affirmative with regard to the Title VII discrimination claim premised on a failure to promote, but in the negative with regard to her Title VII discrimination claim premised on pay discrimination, as well as her claims of retaliation and hostile work environment.

As was discussed above in Part I.B.2 of this Decision and Order, Defendant CCE Delaware argues both (1) that Plaintiff's discrimination claims asserted under Title VII are untimely because she did not file her complaint with the EEOC within 300 days of any identifiable adverse employment action, and (2) that her retaliation claim asserted under Title VII has not been properly exhausted because she did not raise those claims in a charge before the EEOC before bringing this federal action.

1.    Title VII Discrimination Claims

"'There are two prerequisites for filing a Title VII action in federal court; plaintiff must (1) file a timely charge of employment discrimination with the EEOC and (2) receive a notice of the right-to-sue letter.'" *Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, 20-CV-0337, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9, 2022) (D'Agostino, J.) (quoting

---

dispute exists regarding the authenticity or accuracy of the document.   It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Coleman v. Bd. of Educ., et al.*, 96-CV-4293, 2002 WL 63555, at *3 [S.D.N.Y. Jan. 15, 2002]).

A plaintiff cannot recover for "discrete acts of discrimination or retaliation" that occurred more

than 300 days before he or she filed a complaint with the EEOC.   *Kimball v. Vill. of Painted*

*Post*, 737 F. App'x 564, 567-68 (2d Cir. 2018) (citing *Deravin v. Kerik*, 335 F.3d 195, 200 [2d

Cir. 2003]; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 [2002]).   "When a

plaintiff alleges 'unlawful discrimination or retaliation, discrete actions such as termination,

failure to promote, denial of transfer, or refusal to hire are easy to identify and are not actionable

if time barred, even when they are related to facts alleged in timely filed charges.'"   *Al-Shimary*

*v. State Univ. of New York at Binghamton*, 22-CV-1282, 2023 WL 7128861, at *4 (N.D.N.Y.

Oct. 30, 2023) (McAvoy, J.) (quoting *Banks v. GM, LLC*, 81 F.4th 242, 259 [2d Cir. 2023]);

*accord Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Morgan*, 536

U.S. at 114).

### a.      Failure to Promote

In her Complaint, Plaintiff alleges that Defendants discriminated against her "in terms of

promotion and compensation for 20 years by failing to promote her to a Team Leader position

when she was eligible for the promotion and doing more than the required work," alleging that

she "did the work of a Team Leader since 2001 and achieved the appropriate master's degree, at

substantial expense, in 2003 after Cornell Cooperative Extension Administration changed their

policies to require a master's degree in order to attain a higher status."   (Dkt. No. 1, at 6.)   She

alleges that she made various complaints internally to Defendants in 2012, 2018, 2020, and 2021

that she is not sure were ever actually considered or investigated, and that, in 2016, Defendant

Cornell Administration engaged in a "reclassification" of job titles which resulted in Plaintiff

being "demoted" from Core Agricultural Team Coordinator to Resource Educator, a title that she

had held many years prior, although she admits she was elevated to Senior Resource Educator

the following year.   (*Id.* at 7-9.)   She alleges, however, that she was never promoted to titles

such as Agricultural Issue Leader or Team Leader, despite that fact that such titles were "in line

with all of the duties she was already doing."   (*Id.* at 7-10.)

Plaintiff's allegations do not plausibly suggest that she suffered an adverse employment

action that occurred within the 300-day period before she filed her complaint with the EEOC in

June 2021 related to a failure to promote.   An adverse employment action is one that "involve[s]

material changes to an employee's conditions of employment" that are "more disruptive than a

mere inconvenience or alteration of job responsibilities."   *Banks v. General Motors, LLC*, 81

F.4th 242, 269 (2d Cir. 2023) (citing *Tassy v. Buttigieg*, 51 F.4th 521, 529 [2d Cir. 2022])

(internal quotation marks omitted).   To the extent that her allegations that the reclassification of

her job title in 2016 represented a demotion that could constitute an adverse action, that action

unquestionably occurred well outside the 300-day period and is therefore time-barred.   She

further alleges that she met with the Chair of the Board of Directors in July 2020 regarding the

compensation of women at Defendant CCE Delaware, but provides no details about whether she

specifically requested a promotion in that meeting and, in any event, that occurrence still falls

outside of the 300-day period.[3]

Her other allegations, that she continued to not be promoted despite "bringing up equity

in salary" and making "complaints," even for requests after August 28, 2020, simply do not rise

to the level of an adverse employment action as a matter of law.   Notably, although Plaintiff

_____

[3]      The Court notes that 300 days prior to the date when Plaintiff filed her EEOC charge on
June 24, 2021, is August 28, 2020.

alleges she was "eligible" for promotion to Team Leader and that she had been doing "the work of Team Leader since 2001" without receiving the title, she does not allege that Defendant CCE Delaware was actually offering such a promotion at any relevant time to any employee, or that it was required to promote her when she reached a certain level of qualification; instead she alleges generically that she "did not benefit in title advancements or promotion when compared to men with similar qualifications, workload, seniority and responsibility."   (Dkt. No. 1, at 8.)   Also notable is the fact that Plaintiff does not provide any pertinent details regarding the content of any complaints or requests for promotions that she may have made in late-2020 or early-2021 before she filed her EEOC charge.   Instead, she merely alleges that "[c]omplaints to the Board President went nowhere along with complaints in 2021 to Sarah Fox Dayton at Cornell Cooperative Extension Administration whose job it is to make sure EEO is followed by the Associations," and that, in 2021, she "wrote letters to the Director of Extension, Dr. Christopher Watkins, who said that he had faith that Sarah Fox Dayton and Danielle Hauteniemi would take care of things [but] [n]othing happened."   (Dkt. No. 1, at 8-9.)   In her EEOC charge, she similarly states that, in terms of the relevant period, "[i]n April 2021, I complained again.   No action was taken."[4]   (Dkt. No. 18, Attach. 2, at 2-3.)   Such a complaint appears from context to have been regarding "disparate" or "discriminatory" treatment and pay.   (*Id.*)   Plaintiff has not

---

[4]      Although the EEOC charge was not appended to the Complaint for this action, the Court finds that the charge is appropriate to consider even on a motion to dismiss because it is a document that is integral to the complaint and/or incorporated by reference in the complaint. *See Samuels v. City of New York*, 22-CV-1904, 2023 WL 5717892, at *5 n.4 (S.D.N.Y. Sept. 5, 2023) (considering information in the EEOC charge because it was incorporated by reference into the complaint and was integral to the claims of discrimination and retaliation); *Orsaio v. New York State Dep't of Corrs. and Cmty. Supervision*, 17-CV-0685, 2017 WL 11269341, at *4 (N.D.N.Y. Nov. 2, 2017) (Sannes, J.) (noting that "the Court may consider a plaintiff's charges with the DHR and the EEOC that are either incorporated by reference or otherwise integral to the complaint without converting a motion to dismiss for failure to state a claim into one for summary judgment").

provided factual allegations to plausibly suggest that Defendants' response to such complaints (effectively ignoring them) constitutes a discrete denial of promotion sufficient to constitute an adverse action.   To the extent she alleges that she was performing the work of a Team Leader but was denied promotion to that title, she also specifically alleges that she was doing such work as early as 2001, as well as that her duties increased in 2012 without a consequent change in title and that she was performing the duties in line with the Team Leader title in 2016 at the time her position was reclassified, and thus has not plausibly alleged that any failure to promote on that basis was timely.   Because Plaintiff has not plausibly alleged an adverse employment action within the 300-day period before when she filed her EEOC charge related to a failure-to-promote, her discrimination claim pursuant to Title VII on that basis is time-barred.

### b.      Pay Discrimination

Her discrimination claim brought pursuant to Title VII alleging pay discrimination is a different matter.   Such claims are somewhat unique given that they involve an ongoing harm that continues to occur for as long as a plaintiff is receiving a paycheck.   Pursuant to 42 U.S.C. § 2000e-5(e)(3)(A), Congress has determined that "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid*, resulting in whole or in part from such a decision or other practice."   42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added).   This statute further permits "recovery of back pay for up to two years preceding the filing of the charge, where the

unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard with to discrimination in compensation that occurred outside the time for filing a charge."   42 U.S.C. § 2000e-5(e)(3)(B).

The statute therefore explicitly indicates that, in order for an action for pay discrimination under Title VII to be timely, a plaintiff need only have received paychecks that were affected by the alleged discriminatory wage practice within the 300-day period that preceded the filing of the EEOC charge.  *See Husser v. New York City Dep't of Educ*., 137 F. Supp. 3d 253, 263 (E.D.N.Y. 2015) (concluding that "the continuing violation doctrine allows Husser to seek relief under Title VII for continuing pay discrimination, if any, about which she timely complained" under the requirements of 42 U.S.C. § 2000e-5[e].   In her Complaint, Plaintiff has alleged that she continued to work for Defendant CCE Delaware from the time she was hired in 1996 until December 2021, and that Defendants engaged in ongoing pay discrimination against herself and other women by paying them less than men, which continued during the relevant period between August 28, 2020, and June 24, 2021.   (Dkt. No. 1.)   She has therefore plausibly alleged that she experienced adverse actions within the 300-day period as a result of continuing to receive a paycheck that was the product of discriminatory pay practices based on her gender.   As a result, Plaintiff's discrimination claim under Title VII that is premised on pay discrimination specifically is timely.

### 2.    Title VII Retaliation and Hostile Work Environment Claims

Defendant CCE Delaware has also argued that Plaintiff has not exhausted her administrative remedies as to her retaliation claim because such alleged conduct took place after she filed her EEOC charge, and thus the EEOC did not review that portion of her asserted

17

claims.   Although not specifically addressed by Defendant CCE Delaware, Plaintiff's apparent

hostile work environment claim also stems from the behavior she alleges is retaliation.   (Dkt.

No. 1, at 4 [asserting in her second cause of action that she suffered retaliation after making her

EEOC charge, which she described as a "hostile work environment"].)

It is true that the allegations regarding the alleged retaliation and hostile work

environment were not before the EEOC in the original charge.   However, Plaintiff has

specifically alleged that the retaliation was a result of her filing that charge.   (Dkt. No. 1, at 4.)

"[J]urisdiction exists over Title VII claims only if they have been included in an EEOC charge or

are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged

in the EEOC charge."   *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (internal quotation

marks omitted).   "Subsequent conduct is reasonably related to conduct in an EEOC charge if:

(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the

charges of discrimination; (2) *it alleges retaliation for filing the EEOC charge*; or (3) the

plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner

alleged in the EEOC charge.'"   *Alfano*, 294 F.3d at 381 (citing *Butts v. City of N.Y. Dep't of

Hous. Preservation and Dev.*, 990 F.2d 1397, 1402-03 [2d Cir. 1993]) (emphasis added); *see

also Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) ("[I]f a plaintiff has already

filed an EEOC charge, we have been willing to assume that the exhaustion requirement is also

met for a subsequent claim 'alleging retaliation by an employer against an employee for filing an

EEOC charge.'").

Because the allegations in Plaintiff's complaint directly and plausibly suggest that

Defendants engaged in retaliatory actions against her as a result of her filing of the EEOC

18

charge, including removing her as Safety Officer, refusing to speak to or acknowledge her at meetings, "villianiz[ing]" her to other staff, delaying payment of her accrued leave, and refusing to communicate with and assist her, such claims are reasonably related to the conduct alleged in the EEOC charge and will be deemed to have been exhausted for the purposes of permitting her to assert them in this action.   Defendant CCE Delaware notably does not assert any arguments regarding why it believes this conduct is not reasonably related to that encompassed by the EEOC charge.   (Dkt. No. 18, Attach. 4, at 8.)   For all of these reasons, the asserted claims for retaliation and hostile work environment must therefore be considered on their merits.

**B.      Whether Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted**

        After careful consideration, the Court answers the above question in the negative with regard to her Title VII pay discrimination and retaliation claims, but in the affirmative with regard to her hostile work environment and Equal Pay Act claims, for the reasons discussed below.[5]

**1.      Pay Discrimination Claim**

        "To state a prima facie case of pay discrimination under Title VII, a plaintiff must show

_____

[5]      The Court notes that, in resolving these issues, it has considered the additional facts that this *pro se* Plaintiff has raised in her opposition memorandum of law, as well as the evidence that Plaintiff has appended to her opposition memorandum of law (but which is not incorporated by reference or integral to the Complaint), to the extent they are consistent with the factual allegations of her Complaint.   *See Drake v. Delta Air Lines, Inc*., 147 F.3d 169, 170 n. 1 (2d Cir. 1998) (per curiam) ("Like the district court, we deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (indicating that courts cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations); *see, e.g., Netti v. New York*, 17-CV-0976, 2018 WL 6671555, at *6, n.5 (N.D.N.Y. Dec. 19, 2018) (Suddaby, C.J.) ("In the alternative, the Court finds that those additional factual allegations are not consistent with Plaintiff's Amended Complaint, which is detailed but conspicuously absent of them.").

that (1) she was a member of a protected class, (2) she was qualified for the job in question, (3) she received inequitable compensation, and (4) the compensation decision occurred under circumstances that raise an inference of discrimination."   *Merisier v. Kings Cnty. Hosp*., 15-CV-2739, 2020 WL 13666419, at *8 (E.D.N.Y. Sept. 29, 2020) (citing *Lenzi v. Systemax, Inc*., 944 F.3d 97, 110 [2d Cir. 2019]).   The Second Circuit has clarified that "a Title VII plaintiff alleging a discriminatory compensation practice need not establish that she performed equal work for unequal pay" as is required for claims under the Equal Pay Act; rather, "[b]y its plain terms, Title VII makes actionable any form of sex-based compensation discrimination." *Lenzi*, 944 F.3d at 110.

There appears to be no dispute that Plaintiff has sufficiently alleged that she is a member of a protected class and that she was qualified for the job she was performing.   Regarding the third factor, Plaintiff has further plausibly alleged that she received inequitable compensation compared to male coworkers through various allegations that she brought up complaints about inequity in salaries and women being "lower paid," that she was paid less than a new male hire, that men were being paid more than women according to her review of the compensation budget that was inadvertently emailed to her in 2018, that she tried to work with the Board of Directors to "make things more equitable," that she was not afforded the title or pay of men doing similar work, and that she compared herself to a male Team Leader who she alleges was doing the same work as her for greater pay.   (Dkt. No. 1.)

Plaintiff has also plausibly alleged that the inequitable compensation occurred under circumstances giving rise to an inference of discrimination.   Specifically, she alleges, among other things, that Executive Director Jeanne Darling did not allow women to question why they

20

could not attend Personnel Committee meetings and also justified paying women, including Plaintiff, less by stating that "'men supported families' while [women's] salaries were supplemental."   (Dkt. No. 1, at 6-7.)   She further includes allegations to plausibly suggest that Executive Director Darling had control over which job title Plaintiff held and, as a result, her salary.   (*Id.* at 7.)   She also alleges that only men held "leader" level positions until 2023.   (*Id.* at 8.)

Defendant CCE Delaware notably does not put forth any arguments regarding the merits of whether Plaintiff has stated a plausible claim of pay discrimination in its memoranda, instead using its section purportedly regarding the plausibility of the Title VII claim to merely rehash its arguments regarding why the Title VII discrimination claims are time-barred.   (Dkt. No. 18, Attach. 4, at 11; Dkt. No. 23, at 6.)   Nor do its arguments related to the Equal Pay Act claim suffice to fill that gap, because those arguments rely on the premise that the individual to whom Plaintiff has compared herself was not performing "equal work" to her.   (Dkt. No. 18, Attach. 4, at 11-12; Dkt. No. 23, at 6-7.)   As was discussed earlier in this Decision and Order, "equal work" is not a requirement of a Title VII pay discrimination claim.   *Lenzi*, 944 F.3d at 110.   As a result, because Plaintiff's Complaint plausibly states a claim upon which relief can be granted as to pay discrimination under Title VII and Defendant CCE Delaware has not supported any nominal effort to move for dismissal of that claim as a matter of law beyond a procedural basis, the Court finds that this claim should survive the current motion to dismiss.

### 2.    Retaliation and Hostile Work Environment Claims

#### a.    Retaliation

"At the pleading stage, 'the allegations in the complaint need only give plausible support

21

to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'"   *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).   "For a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated–or took an adverse employment action–against him, (2) because he has opposed any unlawful employment practice."   *Duplan*, 888 F.3d at 625 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 [2d Cir. 2015]).   "To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action . . . But-for causation does not, however, require proof retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."   *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90-91).

As an initial matter, the Court observes that, as to Plaintiff's claims of retaliation and hostile work environment, Defendant CCE Delaware does not make any arguments regarding why Plaintiff's Complaint has failed to plausibly allege such claims; instead, Defendant CCE Delaware appears to rely on its argument that such claims cannot proceed because Plaintiff failed to exhaust her administrative remedies as to those claims.   (Dkt. No. 18, at 8, 9-12; Dkt. No. 23, at 5-6.)   The only portion of Defendant CCE Delaware's memorandum that can be construed as containing an argument on the merits of these claims in any respect is the assertion that, according to Plaintiff's own allegations, she voluntarily resigned her employment, which can be assumed to be an implicit argument for why the loss of her job does not constitute an adverse action.   (Dkt. No. 18, Attach. 4, at 6.)

For a retaliation claim under Title VII, "an adverse employment action is any action that

'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 [2006]).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: 'the antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 64).

As was discussed above, Plaintiff has alleged that, after she filed her EEOC charge in June 2021, she was removed as the Safety Officer, was not spoken to or acknowledged at meetings, and was "villainized by the Executive Director to other staff."  (Dkt. No. 1, at 10.)   In her opposition memorandum of law, Plaintiff further states that she was not included COVID safety policies, that she had been the Safety Officer for ten years before she filed her EEOC charge, and that she was informed by a Human Resources individual that the Finance Lead did not like her "tone" in emails, causing her to be "singled out and intimidated as a result of filing a charge with the EEOC."  (Dkt. No. 21, at 8-9.)

Given Defendant CCE Delaware's failure to assert any specific arguments as to why the allegations in the Complaint do not plausibly suggest that Plaintiff suffered an adverse action merely because her employment was not terminated, the Court finds that Plaintiff's allegations as to this aspect of her retaliation claim narrowly suffice to survive the motion to dismiss. Specifically, Plaintiff has at least plausibly alleged conduct, particularly regarding the removal from the position of Safety Officer, that could dissuade a reasonable person from filing a charge of discrimination, and that occurred in close temporal proximity to her filing of the EEOC

charge.  *See Dickens v. Hudson Sheraton Corp. LLC*, 689 F. App'x 670, 672 (2d Cir. 2017)

(noting that "'a materially adverse change might be indicated by a termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities or other indices . . . unique to a

particular situation,' may constitute an adverse employment action") (quoting *Vega*, 801 F.3d at

85).

      Plaintiff also alleges retaliation related to Defendant CCE Delaware delaying payment of

her accrued vacation time that resulted in a loss of Social Security benefits to both her and her

husband based on her wages.  (Dkt. No. 1, at 4, 10-11.)  In response, Defendant CCE Delaware

presents a copy of a limited release Plaintiff signed on June 9, 2022, in which she released all

causes of action related to the "payout of certain vacation accruals to said Releasor upon her

separation from employment in December 2021 as set forth in an email from Releasor (Mariane

Kiraly) to the Executive Committee of Cornel [sic] Cooperative Extension Delaware County

dated March 4, 2022 regarding 'Claim for Loss of Social Security Benefits and Income Tax

Losses as a Result of the Vacation Buyout Payment Delay from 2021 to 2022.'"  (Dkt. No. 18,

Attach. 3, at 2.)  Defendant CCE Delaware argues that, as a result of this release, Plaintiff's

retaliation claim premised on such delay in payment is barred from being litigated.  (Dkt. No.

18, Attach. 4, at 12.)  However, because the Complaint does not attach or incorporate by

reference such release and it does not appear to be integral to the Complaint, it may not be

considered on this motion to dismiss.  *See Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*,

73 F.4th 126, 135 n.1 (2d Cir. 2023) ("When 'presented with matters outside the pleadings,' a

district court must either 'exclude[] the extrinsic documents' or 'convert the motion to one for

summary judgment.'"); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304-05 (2d Cir. 2021) (noting that a district court may rely on extrinsic evidence on a motion to dismiss only if the complaint incorporates it by reference, if it is integral to the complaint [i.e., was relied upon by the plaintiff when drafting the complaint], or if it is the type of evidence of which courts take judicial notice).   While publicly filed stipulations of settlement are generally subject to judicial notice, settlements or releases that are not court documents are not.   *See Loccenitt v. Pantea*, 12-CV-1356, 2014 WL 7474232, at *2 (S.D.N.Y. Dec. 29, 2014) (noting that district courts can rely on matters of public record when deciding a motion to dismiss, including settlement agreements and releases that appear on the public docket); *Shahzad v. Cnty. Of Nassau*, 13-CV-2268, 2013 WL 6061650, at *4 (E.D.N.Y. Nov. 14, 2013) (declining to take judicial notice of a settlement agreement and release that did not appear on the court's docket).   The release here appears to be one executed between the parties outside of any lawsuit, and it is not clear whether, apart from being submitted now with this motion, it is a matter of public record. In light of this, the Court finds that it would not be proper to take judicial notice of the release, and thus it may not consider that release when deciding the motion to dismiss.   Although the Court does have the option of converting this portion of the motion to one for summary judgment, it declines to do so in light of Plaintiff's *pro se* status and the fact that the scope of the release itself relies upon yet another piece of extrinsic evidence, the cited email dated March 4, 2022, which does not appear to have been submitted to the Court.   (Dkt. No. 18, Attach. 3, at 2.)

Liberally construing the allegations in the Complaint, and without considering the proffered extrinsic evidence, the Court finds that Plaintiff has plausibly alleged that Defendant CCE Delaware retaliated against her for the filing of her EEOC charge by delaying payment of

her accrued leave and thereby causing her to suffer a loss of Social Security retirement benefits.

### b.    Hostile Work Environment

"In order to establish a claim for a hostile work environment under Title VII, the underlying harassment alleged 'must be sufficiently severe or pervasive,' both subjectively and objectively, 'to alter the conditions of [the plaintiff's] employment and create an abusive working environment,'" and "the plaintiff must establish that the hostile or abusive treatment was because of her membership in a class of persons protected by Title VII." *Ouderkirk v. Rescue Mission Alliance of Syracuse*, 21-CV-1048, 2023 WL 8781992, at *11-12 (N.D.N.Y. Dec. 19, 2023) (Suddaby, J.) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 [2d Cir. 2012]).

Plaintiff has not plausibly alleged that the hostile work environment she claims to have experienced was because of her membership in a protected class.   Specifically, she does not include facts that the allegedly hostile treatment was because she was a woman (despite her other allegations that she was discriminated against in terms of promotions and pay on the basis of her gender), but rather because she filed an EEOC charge.   (Dkt. No. 1, at 4, 10-11 ["Mariane Kiraly suffered a hostile work environment after filing her EEOC claim, so much so that she decided to resign 2 years prior to her full retirement, at the age of 63"].)   Thus, to the extent Plaintiff has attempted to plead a hostile work environment separate from her retaliation claim, she has not included allegations plausibly stating such a claim upon which relief can be granted. Such claim must therefore be dismissed.

### 3.    Equal Pay Act Claim

"A plaintiff must establish a prima facie EPA case by demonstrating that 'i) the employer

pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'" *Eisenhauer v. Culinary Institute of Am.*, 84 F.4th 507, 523 (2d Cir. 2023); *see also* 29 U.S.C. § 206(d)(1).   "With regard to the 'equal work' requirement, 'plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility,'" and when "determining whether two positions are substantially equal in skill, 'superficial comparisons based on job title or code are insufficient.'" *Moccio v. Cornell Univ.*, 889 F. Supp. 539, 569-70 (S.D.N.Y. 2012) (quoting *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 [2d Cir. 2001]; citing 29 C.F.R. § 1620.13[e]).   "[A] plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Fila v. State Univ. of New York*, 21-CV-1087, 2022 WL 4379502, at * 2 (N.D.N.Y. Sept. 22, 2022) (quoting *EEOC v. Port Auth. Of N.Y. & N.J.*, 768 F.3d 247, 255 [2d Cir. 2014]).   However, "at the pleading stage, . . . a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal." *Fila*, 2022 WL 4379502, at * 2 (internal quotation marks omitted).

Defendant CCE Delaware argues that Plaintiff has not sufficiently alleged that she performed equal work in a job requiring equal skill, effort, and responsibility or in a job that was performed under similar working conditions because she admits that she was not a Team Leader, but attempts to compare herself to a male employee who is a Team Leader.   (Dkt. No. 18, Attach. 4, at 11-12; Dkt. No. 23, at 6-7.)   The fact that Plaintiff was not a Team Leader in name is not dispositive of the question of whether she has plausibly alleged that she performed work in

a job requiring equal skill, effort, and responsibility because, as discussed above, "'superficial comparisons based on job title or code are insufficient.'"   *Moccio v. Cornell Univ.*, 889 F. Supp. at 569-70.   Plaintiff specifically alleged that, although she was never given the title of Team Leader, "[s]he did the work of Team Leader since 2001 and achieved the appropriate master's degree" required for such a position.   (Dkt. No. 1, at 6.)   She further alleged that titles such as Agricultural Issue Leader or Team Leader [were] in line with all of the duties she was already doing."   (Dkt. No. 1, at 7.)   She also alleged that she "did the work duties of a Team Leader" and supervised employees, and listed a number of specific duties she "carried out as the 'defacto' Agricultural Issue Team Leader."   (Dkt. No. 1, at 8-10.)   Although she did not go into detail regarding what specific duties Mr. Cerosaletti performs, she does state that he is a Team Leader. (Dkt. No. 1, at 12.)

However, Plaintiff incorporates by reference a "rebuttal of the Position Statement in the EEOC documents," which provides more information regarding both her own work and that of Mr. Cerosaletti.   (Dkt. No. 1, at 12; Dkt. No. 21, Attach. 14, at 5-6.)   Because she specifically incorporates this evidence by reference and it is integral to the Complaint, it is permissible to consider on the motion to dismiss.   A review of the information in that rebuttal indicates, however, that Mr. Cerosaletti's work was not equal in skill, effort or responsibility (or performed in similar working conditions) to Plaintiff's own work: she states that Mr. Cerosaletti works primarily on technical matters related to "cows and crops," including pesticide recommendations, reading soil samples and maintaining quality of water predominantly on dairy farms, while Plaintiff's work related to financial management, and agricultural economic development such as training farmers on financial management and tax laws and assisting them

28

with grants and succession or business plans; Mr. Cerosaletti works solely in the NYC

watershed, while Plaintiff did her work countywide.   (Dkt. No. 21, Attach. 14, at 5-6.)

Although the Court does not doubt Plaintiff's assertions that both of these types of activities are

of equal importance to farmers in the relevant area, that importance does not change the fact that,

to state a claim under the Equal Pay Act, "a plaintiff must establish that the jobs compared entail

common duties or content."   *Fila*, 2022 WL 4379502, at * 2. Because Plaintiff's incorporated

EEOC rebuttal quite clearly shows that her job and that of Mr. Cerosaletti did not entail common

duties or content, she has not plausibly alleged that she suffered an Equal Pay Act violation.[6]

This claim therefore must be dismissed.

### C.   Whether Defendant Cornell Administration Was Plaintiff's Employer for the Purposes of Title VII

After careful consideration, the Court answers this question in the negative for the

reasons stated in Defendant Cornell Administration's memoranda of law.   *See, supra* Parts

I.B.1.a and I.B.1.c.   To those reasons, the Court adds the following analysis.

"It has long been understood by our Court that 'the existence of an employer-employee

relationship is a primary element of Title VII claims.'"   *Felder v. United States Tennis Assoc.*,

27 F.4th 834, 838 (2d Cir. 2022) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 [2d

Cir. 2006]).   However, "an employee is not squarely limited to claims against his or her *formal*

employer," but may assert Title VII liability "against a 'constructive employer' – an entity that

shares in controlling the terms and conditions of a plaintiff's employment."   *Felder*, 460 F.4th at

838 (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 [2d Cir. 2005]).   This

---

[6]      To the extent that the EEOC rebuttal also contains allusions to other individuals that Plaintiff seems to compare herself, the Court finds that, similarly, the information provided regarding the job duties of those individuals also does not meet even the standard of plausibility to sustain the comparison.

"joint employer doctrine" applies "'where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity.'"   *Felder*, 460 F.4th at 838 (quoting *Gulino*, 460 F.3d at 378).

In determining whether an entity is a joint employer, courts should apply the list of non-exhaustive factors established by common law for assessing whether an employer-employee relationship exists.   *Felder*, 460 F.4th at 843.   Those factors include the following: (1) "the hiring party's right to control the manner and means by which the product is accomplished"; (2) "the skill required"; (3) "the source of the instrumentalities and tools"; (4) "the location of the work"; (5) "the duration of the relationship between the parties"; (6) "whether the hiring party has the right to assign additional projects to the hired party"; (7) "the extent of the hired party's discretion over when and how long to work"; (8) "the method of payment"; (9) "the hired party's role in hiring and paying assistants"; (10) "whether the work is part of the regular business of the hiring party"; (11) "whether the hiring is in the business"; (12) "the provision of employee benefits"; and (13) "the tax treatment of the hired party."   *Felder*, 460 F.4th at 843.   "Broadly, these factors examine whether the alleged employer 'paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities' . . . and the crux of these factors is 'the element of control.'"   *Felder*, 460 F.4th at 843 (quoting *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 [3d Cir. 2015]; *Gulino*, 460 F.3d at 371).   The question is therefore whether the relevant entity "share[s] significant control of the same employee" with another employer; where "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities," a court "may properly conclude that a constructive employer-employee relationship

exists." *Felder*, 460 F.4th at 843.

The legal basis for the relationship between Defendant Cornell Administration and

Defendant CCE Delaware is outlined broadly in N.Y. County L. § 224.    Under this statute, the

county board of supervisors has the ability to "appropriate and pay out money for the support and

maintenance of county extension service associations and the work thereof, and for the

employment by the county association of professional staff," and

> the chairman of the board of supervisors may be authorized to
> enter into an agreement to pay such funds in regular installments in
> advance, and such agreement shall be sufficient in the hands of
> [the] county treasurer to pay out such moneys, provided that this
> money shall be expended under an agreement to be entered into
> between the county association and Cornell university, as agent for
> the state, for the cooperative management of said work of the
> county extension service association and the proper supervision of
> the professional staff employed therefor.    The agreement shall
> identify by his or their titles the professional staff to be employed
> by the associations and shall state the salary or salaries to be paid
> and the sources from which payment is to be made. If services of
> professional staff employed by Cornell university are to be
> furnished, or if programs of extension work are to be furnished or
> conducted by Cornell university, the agreement shall identify such
> services or programs and state the terms on which they are to be
> furnished, including the sources from which payments are to be
> made.

N.Y. County L. § 224(8)(a).

The statute further states that, in cooperation with Cornell University and the state, "there

shall be recognized and may be created a subordinate governmental agency consisting of an

unincorporated organization of citizens of the respective counties . . . under a form of

organization and administration approved by Cornell university as agent for the state" that will

"be known as a county or regional extension service association" and which will have a

constitution providing for its form of organization and administration, as well as a board of

directors, president, and treasurer; the board of directors "may adopt such regulations and by-laws governing its procedure in the work assigned to it as are not inconsistent with the provisions of this subdivision," while the president "acts as and in the name of the association in all matters except those as to which the treasurer is given powers and duties."   N.Y. County L. § 224(8)(b).   "Such an association is hereby declared to be a subordinate governmental agency and neither the county nor Cornell university nor any member, officer or director of the association shall be liable in damages for any injury to person or property in connection with the activities of the association the proximate cause of which was not directly their fault or negligence."   *Id.*

Pursuant to N.Y. County L. § 224(8)(d)(3), state apportionments of funds "shall be paid upon vouchers certified by Cornell university" for "salaries of professional staff employed by the association," and "for salaries of staff employed by Cornell university when administering, furnishing or conducting extension programs benefiting the county under agreement with the association."   N.Y. County L. § 224(8)(d)(3).   Such payments "shall be made in accordance with the annual agreement between the association and Cornell university," which must specify (1) "the amount in dollars to be expended for each of such purposes and the amount in dollars to be provided from apportionments pursuant to this subdivision," (2) " identify by titles the positions for which the salary is paid," and (3) in situations where the salary in question is for an agent jointly employed by two or more county associations, or for agents or personnel employed by Cornell University to furnish or conduct programs for the benefit of two or more counties, "identify each of the county extension service associations against whose account payments pursuant to this subdivision are to be charged and the amount to be charged."   N.Y. County L. §

224(8)(d)(4).

Moreover, the statute provides as follows:

> The general supervision of the co-operative extension work in a
> county herein provided for shall be under the direction of Cornell
> university as agent for the state and Cornell university is hereby
> authorized to set standards for professional staff and to make rules
> and regulations for the organization and conduct of such work.
> The moneys appropriated pursuant to this subdivision shall be paid
> from the state treasury on the warrant of the comptroller on
> vouchers approved by the treasurer of Cornell university.

N.Y. County L. § 224(e).

A county association is permitted, as relevant, to (1) "employ professional staff to
organize, carry out, and co-ordinate the work," (2) "exchange services of professional staff
employed by it for services of professional staff employed by another county association or
employed by Cornell university, upon such terms as shall be agreed," (3) "contract with another
county association or with other county associations for the joint employment of one or more
professional staff members," (4) "contract with Cornell university for the furnishing of services
of professional staff by the university to conduct educational work throughout the state or in
areas thereof," (5) "contract with Cornell university for the furnishing and conduct of programs
of extension work or services, within the county or benefiting the county," (6) "contract with one
or more other county associations for the purpose of assuring concurrent action by several
associations in contracting with Cornell university for service of professional staff at Cornell
university or for programs of work furnished by Cornell university," and (7) "in support of its
operations, research, and educational programming needs, an association may contract with one
or more entities, including but not limited to federal, state, or local government, not for profits or
for profit organizations to provide services, compensated or uncompensated . . . Such contracts

are subject to review by Cornell university."   N.Y. County L. § 224(8)(e).   Lastly, the statute

provides that, "[i]f the services of professional staff employed by Cornell university are to be

furnished, or if programs of extension work are to be furnished or conducted by Cornell

university, the agreement shall identify such services or programs and state the terms upon which

they are to be furnished, including the source from which payments are to be made," and if

services are to be furnished according to any of the above contractual situations from paragraph

(e), "such contract or contracts shall be subject to approval by the legislative bodies of the

counties concerned and executed as any other county contracts."   *Id.*

       In the Complaint, Plaintiff makes the following potentially relevant allegations: (1) she

obtained a master's degree in 2003 "after Cornell Cooperative Extension Administration

changed their policies to require a master's degree in order to obtain a higher status"; (2) in 2016,

Defendant Cornell Administration "made changes in titles called a 'reclassification,'" and that

Plaintiff was thereafter "demoted" in classification from a Core Agricultural Team Coordinator

to Resource Educator; (3) Executive Director of Defendant CCE Delaware, Jeanne Darling,

"used the 'reclassification' to keep [Plaintiff] at a lower level instead of affording her a title such

as Agricultural Issue Leader or Team Leader"; (4) in November 2018, Plaintiff met with the

representative of Defendant Cornell Administration, Danielle Hautaniemi, "who never or rarely

attended Personnel Meetings but did try to come to some Board meetings," and who provided

Plaintiff with "little guidance" about her inequality complaints; (5) Plaintiff sought assistance

with her complaints from the Board of Directors of Defendant CCE Delaware, but "[t]hey took

the Executive Directors [sic] recommendations regarding salary and title and never questioned

anything"; (6) the "crux of the matter was manipulation of job titles, sanctioned by Cornell

Cooperative Extension Administration, that was used to justify discrimination and marginalization of women at Cornell Cooperative Extension of Delaware County[;] there was very little or lax oversight of the organization's finances, practices, or policies"; (7) in 2021, Plaintiff made complaints to Sarah Fox Dayton with Defendant Cornell Administration, "whose job it is to make sure EEO is followed by the Associations"; (8) in 2021, Plaintiff wrote letters to Director of Extension, Dr. Christopher Watkins, who did not do anything; (9) in January 2023, it was revealed at a Board meeting that "men were being paid over 100% of the recommended pay scales set forth by Cornell Cooperative Extension Administration," but that Defendant Cornell Administration did not properly oversee Defendant CCE Delaware, did not properly train the Board, and did nothing to remedy the situation after Plaintiff complained.   (Dkt. No. 1, at 7-12.)

As can be seen, Plaintiff's claims against Defendant Cornell Administration are premised on its failure to oversee the conduct of Defendant CCE Delaware and failure to address purported violations of equal opportunity law when Plaintiff brought such violations to its attention.   However, what Plaintiff's allegations do not do is plausibly suggest that Defendant Cornell Administration was her employer for the purposes of Title VII liability.

As was discussed above, the main factor under consideration for whether an entity can be considered a constructive or joint employer is whether that entity exercised control over the employee's daily activities or paid their salary, or had the ability to hire or fire the employee. As to the issue of payment of Plaintiff's salary, N.Y. County L. § 224(8) makes clear that, although Defendant Cornell Administration certifies the vouchers through which Defendant CCE Delaware receives the funds to pay its staff, the funds themselves come from the county, and Defendant Cornell Administration merely acts as an oversight agency to ensure that the payment

vouchers are compliant with the agreement between Defendant Cornell Administration and Defendant CCE Delaware.   Nothing in this arrangement plausibly suggests that Defendant Cornell Administration is the entity which paid Plaintiff's salary.

Further, there is no indication that Defendant Cornell Administration had any authority to hire or fire employees for Defendant CCE Delaware, and Plaintiff makes no allegations that such authority existed in the agreement between Defendant Cornell Administration and Defendant CCE Delaware.   Instead, Plaintiff alleges that Defendant Cornell Administration should have been providing better oversight and training to prevent and remedy Defendant CCE Delaware from committing discrimination.   As to the fact that Defendant Cornell Administration had responsibility for setting the standards or classifications of job titles applied to employees at Defendant CCE Delaware, Plaintiff's own allegations indicate that, although Defendant Cornell Administration was responsible for setting the classifications of various positions that exist at Defendant CCE Delaware, it was the Executive Director of Defendant CCE Delaware, and not anyone at Defendant Cornell Administration, who made the decision about which title Plaintiff would have after the reclassification, and which titles she would or would not be promoted to.[7] She makes no allegations, other than a general appeal to "oversight" authority, that Defendant

---

[7]     Plaintiff makes statements in her opposition memorandum of law that potentially differ from such allegations, asserting that "[t]he Director of Cornell Cooperative Extension Administration confers titles on professional staff.   Mariane Kiraly was reappointed every four years and her title was conferred each time by the Director of Cornell Cooperative Extension. Each letter refers to the relationship between Cornell University and Cornell Cooperative Extension including oversight required by state law and Memorandum of Agreement between Cornell University and Cornell Cooperative Extension.   Cornell University is responsible for conferring the appropriate titles, according to the work performed, and salaries are dictated by titles.   Mariane Kiraly was never afforded the appropriate title for the work she was doing and suffered financial and professional losses.   Cornell University was negligent in conferring the appropriate title on Mariane Kiraly."   (Dkt. No. 16, at 7-8.)   To the extent that these allegations differ from those in her Complaint, the Court must ignore them for the purposes of this motion to dismiss.

Cornell Administration had control over which title Plaintiff was afforded.   The relevant statute does not clearly state that Defendant Cornell Administration has the power to hire and fire employees of a county extension agency and Plaintiff's allegations do not plausibly suggest that that the agreement between Defendant Cornell Administration and Defendant CCE Delaware otherwise provided such authority.

Moreover, although the statute tasks Defendant Cornell Administration with the general supervision of the work of a county extension agency and authorizes it to set standards for professional staff and to make rules and regulations for the organization and conduct of such work, such authority does not inherently mean Defendant Cornell Administration had control over Plaintiff's daily work activities.   Plaintiff does not include any allegations as to how any rules or regulations Defendant Cornell Administration may have made, separate and apart from those the Board of Directors of Defendant CCE Delaware were empowered to make, gave it a sufficient level of control over the type of work Plaintiff was assigned or pursued with Defendant CCE Delaware.   Such general oversight or rule-making authority is insufficient, in this context, to plausibly suggest that Defendant Cornell Administration was Plaintiff's constructive or joint employer, and therefore it cannot be held liable for any discriminatory actions committed by Defendant CCE Delaware, Plaintiff's direct employer.

Plaintiff further argues that, regarding control, the fact that the statute states that Defendant CCE Delaware is a "subordinate agency" is proof that it was controlled by Defendant Cornell Administration.   (Dkt. No. 16, at 8.)   However, the fact that Defendant CCE Delaware is a subordinate governmental entity and Defendant Cornell Administration acts as an agent of the state for the purposes of overseeing that agency's work does not mean that Defendant Cornell

37

Administration has total control over everything Defendant CCE Delaware does; the statute itself gives to Defendant CCE Delaware's Board of Directors the authority to "adopt such regulations and by-laws governing its procedure in the work assigned to it as are not inconsistent with the provisions of this subdivision," meaning Defendant CCE Delaware had some discretion over determining how to conduct the work assigned to it.   N.Y. County L. § 224(8)(b).   Plaintiff has not plausibly alleged that Defendant Cornell Administration had control specifically over the type of work that employees of Defendant CCE Delaware were to be doing or the titles they were assigned as a result of its oversight role as an agent of the state.

For all of the above reasons, the Court finds that Plaintiff has not plausibly alleged that Defendant Cornell Administration was her employer for the purposes of Title VII liability.

### D.      Opportunity to Amend

In light of the above-identified pleading deficiencies as to some of her claims, and because of Plaintiff's *pro se* status, the Court will offer Plaintiff an opportunity to seek leave to amend her Complaint if she believes she can allege additional facts to remedy those deficiencies. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks omitted). Plaintiff is respectfully reminded that any such motion to amend must comply with Local Rule 15.1(a) of the District's Local Rules of Practice (especially that rule's requirement that the motion "must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent

38

means").

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant Cornell Administration's motion to dismiss (Dkt. No. 11) is

**GRANTED**, and Plaintiff's claims against it are **DISMISSED**; and it is further

      **ORDERED** that Defendant CCE Delaware's motion to dismiss (Dkt. No. 18) is

**GRANTED in part** and **DENIED in part**, such that the following claims against Defendant

CCE Delaware are **DISMISSED**:

      (1)    a claim for discrimination pursuant to Title VII premised on a failure to

               promote;

      (2)    a claim for hostile work environment pursuant to Title VII; and

      (3)    a claim for disparate compensation under the Equal Pay Act; and it is

               further

      **ORDERED** that the following claims against Defendant CCE Delaware **SURVIVE**

Defendant CCE Delaware's motion to dismiss:

      (1)    a claim for discrimination pursuant to Title VII premised on pay

               discrimination; and

      (2)    a claim for retaliation pursuant to Title VII related to Social Security

               benefits; and

      (3)    a claim for retaliation pursuant to Title VII related to the alleged actions

               while Plaintiff was still employed with Defendant CCE Delaware; and it is

               further

      **ORDERED** that Plaintiff shall have **THIRTY (30) DAYS** from the entry of this

Decision and Order in which to file a motion to amend her Complaint, should she wish, to rectify

the pleading deficiencies in her dismissed claims that are identified in this Decision and Order.

Dated: March 22, 2024
       Syracuse, New York




Glenn T. Suddaby
U.S. District Judge